Constance Diane WARD, Appellee,

v.

Michael Steven WARD, Appellant.

No. 82565.

Court of Appeals of Oklahoma,
Division No. 3.

March 28, 1995.

Stanley D. Monroe, Tulsa, for appellant.

Lillian M. Hamor, Tulsa, for appellee.

## OPINION

HUNTER, Judge.

Appellee, Mrs. Ward, filed a petition for divorce from her husband of 19 years and applied for certain temporary orders. Appellant, Dr. Ward, appeared at the temporary order hearing. The parties submitted an "agreed" temporary order which the court entered. The agreed order set temporary child support at $806 per month for their two children, in accordance with the Child Support Guidelines.

Before trial, the parties stipulated that Appellee would be awarded custody of the children and that child support would be assessed in compliance with the guidelines, 43 O.S. 1991 § 118 et seq. The issues for trial included support alimony and property division. Before trial, Appellant had moved for disqualification of the trial judge. The trial court denied that motion.

Appellant contends that the trial court erred in several respects. First, Appellant asserts that the court used an incorrect standard for determination of the award of support alimony, and that the award was excessive. Appellant's second assertion is that the trial court erred in certain parts of the child support order. Next, Appellant states that the trial court neglected its duty to recuse and finally, Appellant argues that the trial court erred in its valuation of Appellant's medical practice.

## STANDARD OF REVIEW

The reviewing court will not set aside the judgment of the trial court in an equitable action unless it is clearly against the weight of the evidence. *Marshall v. Marshall*, 364 P.2d 891, 895 (Okl.1961). We will affirm the child support order, after having reviewed the whole record, if it is just

and equitable. *Thrash v. Thrash*, 809 P.2d 665, 668 (Okl.1991). We will not substitute our judgment for that of the trial court's award of support alimony unless the record reflects that the trial court abused its discretion. *Archer v. Archer*, 813 P.2d 1059, 1062 (Okl.App.1991). We will also affirm the court's valuation of the marital estate so long as it is not clearly against the weight of the evidence. *Mocnik v. Mocnik*, 838 P.2d 500, 505 (Okl.1992). A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. 5 O.S.1991 Ch. 1, App. 4, Code of Judicial Conduct, Canon 3(C).

### FINDINGS ON REVIEW

■ We find the trial court's award of support alimony to be based on evidence and not clearly against the weight of that evidence. Appellant was a physician earning about $10,000.00 per month. Appellee was working as a paralegal, earning about $1,450.00 per month. Appellee had a Bachelor's degree from Oklahoma State University, earned before the parties married. Appellant was a junior in medical school and Appellee worked outside the home when they were first married. Upon the birth of the parties' first child, Appellee began her tenure as a homemaker/mother, which lasted until the younger child was ten years old. Appellee then began working as a legal secretary, then paralegal for a law firm. During this time, she received an Associates Degree as a legal assistant. By the time of trial, Appellee had moved from the marital home in Sapulpa to an apartment in Tulsa. She still had the younger daughter in her custody. Appellee testified that she had recently sat for the Law School Admission Test and if successful, planned to enter the night and weekend program, leading to a juris doctorate, at the University of Tulsa. The court awarded $2,500.00 per month, for 60 months, support alimony. This amount includes law school tuition. Based on the *Archer* factors,

as well as Appellant's agreement that Appellee should be awarded support money for transition, we find the award sustainable.

■ Next Appellant contends that the child support order is erroneous. We agree that the part of the order which purports to modify retroactively the child support set by the temporary order must be reversed. Our holding is based on the rule that child support orders may not be modified retroactively and are prospective only in their application. *Hicks v. Hicks*, 417 P.2d 830, 832 (Okl.1966). Clearly the final order of child support is not determined by the amount set in the temporary order, but the temporary order is no less an order for being defined in time. The temporary order is the order of the court until terminated by the final judgment. 43 O.S.1991 § 110(B). We also find that the court's final order of child support, which applies from the time of the trial, complies with the child support guidelines and is supported by evidence. We affirm that part of the child support order.

■ For his third proposition of error, Appellant asserts that the trial judge erred when it denied his motion for disqualification. We find that Appellant waived this issue when he failed to follow the procedure set forth in 12 O.S.1991 Ch. 2, App. 1, Rule 15. Appellant followed the first two steps, that is, speaking with the judge in chambers then filing his motion to disqualify. After the hearing on the motion and the judge's denial, however, Appellant failed to re-present his motion to the Chief Judge of the county. Had Appellant re-presented his motion and still not received the relief he desired, Rule 15 provides him an opportunity to go forward by an original proceeding in mandamus to the Supreme Court of Oklahoma. Having opted not to avail himself of two more chances to argue his position, Appellant cannot bring his complaint to this court and expect relief.[1]

---

1. Even if properly preserved, the evidence does not support Appellant's position. Appellant claimed that the judge sat on the protective order hearing and that the order, then on appeal, was adverse to Appellant. The record contains nothing about the protective order and because the parties sought divorces on the mutual grounds of incompatibility, Appellant fails to show why this would be prejudicial. Appellant also claimed that because Appellee had been a paralegal in the community and had professional contacts with the judge, that the Court's impartiality might be questioned. If professional contact by members of the bar and their staffs with the Court were

Finally, Appellant argues that the trial court's valuation of the medical practice at $297,133.00 was erroneous. For purposes of insurance and partnership, Appellant and his former partner valued the business at $500,00.00. In fact, Appellant had bought an undivided one-half interest in the clinic within one year of the trial for $250,000.00. Appellee valued the practice at $340,335.00. Appellant testified that it had zero value because of low marketability. Appellant's expert arrived at $265,960.00, using the *Mocnik*[2] method, but gave the opinion that the figure was too high because it failed to discount 25% for lack of marketability. The discounted valuation resulted in a fair market value of $196,765.00 for the medical practice. With this evidence before the court, we cannot say its adoption of the $297,133.00 was contrary to the clear weight of the evidence.

For these reason, we affirm the trial court's orders except we reverse the court's sustention of Appellee's motion to retroactively modify the temporary child support order. We remand the case to the trial court with directions to re-instate the amount of the temporary child support order, effective from its entry until it terminated with the final child support order as reflected in the decree of divorce.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.

ADAMS, J., concurs.

GARRETT, C.J., dissents.

grounds for disqualification, every time a lawyer went to trial he would have to have a new judge. Appellant also alleged that Appellee had bought gifts for the judge. The record reveals that the judge was pregnant and the legal community and the courthouse personnel gave her a baby shower, in the courthouse. Appellee and Appellant gave the judge a $12.00 baby ring. Appellant also claimed that the ends of justice would be served if the case were transferred to another judge who did not have knowledge of certain members of the local bar who were listed as witnesses. These listed witnesses did not testify, but even had they testified, there is insufficient

evidence to cast doubt on the court's impartiality. Oklahoma's rural counties and small towns provide high quality law and justice. Although we agree that if a judge's impartiality might *reasonably* be questioned, he should disqualify, we find that the Canon is well-served by applying the tests objectively, not subjectively. See *Teehee v. Teehee*, 798 P.2d 1095, 1096 (Okl.App.1990).

2. *Mocnik* stands for the propositions that future earnings (capitalization method of valuation) and "good will" of a business are not values to be used in valuation of property for division of the marital estate.