2006 OK CIV APP 4

**Patrice T. AREHART, Plaintiff/Appellant,**

v.

**Jack M. AREHART, Defendant/Appellee.**

**No. 100,397.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Dec. 30, 2005.

Mark T. Hamby, P. Gae Widdows, Bonham & Howard, P.L.L.C., Tulsa, OK, for Plaintiff/Appellant.

William F. Raynolds, II, Hood & Raynolds, P.C., Tulsa, OK, for Defendant/Appellee.

OPINION

DOUG GABBARD II, Judge.

¶ 1 Plaintiff, Patrice Arehart (Mother), appeals the trial court's decision setting Defendant, Jack Arehart's (Father's), monthly child support obligation at $1,463.47. Because the trial court did not abuse its discretion in applying 43 O.S.2001 § 119, which provides for an enhanced amount of child support where the parties' combined income exceeds $15,000 a month, we affirm.

## FACTS

¶ 2 The parties married in 1989. One child was born of the marriage, in 1990. Wife filed for divorce in 1997. Trial did not take place until May 2003. The decree of divorce provides for joint custody of the child, with Mother receiving primary physical custody, and Father visitation. Custody and property matters are not at issue.

¶ 3 In 2001, Mother filed a motion for a temporary order for support per the statutory Child Support Guideline Schedule (the Guides) at 43 O.S.2001 § 119. In 2002, the trial court issued a temporary order denying child support, but stating Mother could seek support at a later date.

¶ 4 At trial in 2003, Mother again sought child support. The parties stipulated Father's monthly income at $26,099 and Mother's at $11,658. The evidence also showed that the parties and their daughter enjoyed an affluent lifestyle. Expenses for their daughter included $10,000 a year for private school tuition, and several thousand dollars for horseback riding lessons and participation in horse shows.

¶ 5 In its decree of divorce, the trial court made several decisions in computing child support. Mother's appeal concerns the trial court's decision as to the following three matters:

¶ 6 First, the trial court found that Father's income comprised 67 percent of the parties' total income. Actually, Father's income is 69 percent of total income, but the trial court credited him for $2,450 he paid each month to support three other children from a previous marriage. This credit lowered Father's monthly income to $23,649, and lowered Father's percent of the total combined monthly income of $35,307 to 67 percent.

¶ 7 Second, the trial court computed Father's child support payments using a method approved in *Smith v. Smith,* 2003 OK CIV APP 28, 67 P.3d 351. The Guides state exactly how much child support is to be paid up, to a combined parental gross monthly income of $15,000. If the combined income exceeds that amount (as is the case here, even with the trial court's reduction for other child support payments), the Guides provide that child support shall be $1,372 (i.e., the amount provided by the Guides for $15,000 in monthly income) "and an additional amount determined by the court." 43 O.S.2001 § 119(B).

¶ 8 In the child support computation form attached to the decree of divorce, the trial court checked the "Deviation from Guidelines" box, and made the following specific finding:

> The court finds that the parties' combined income exceeds the cap of $15,000 per month. Applying the first method of *Smith v. Smith,* 2003 OK CIV APP 28, 67 P.3d 351, the court sets the Father's child support in the amount of $1,463.47 per month beginning on July 1, 2003.

While the court did not otherwise explain its analysis, it is clear it reached its result by taking the amount of the parties' combined income above $15,000, which was $20,307 ($35,307 minus $15,000), and multiplying that amount by four percent. This resulted in a figure of $812.28. The trial court then added that amount to the $1,372 statutory amount for income of $15,000. This resulted in a combined monthly obligation of $2,184.28. The trial court then multiplied this figure by 67 percent of total income, resulting in the $1,463.47, amount of child support which Husband was ordered to pay.

¶ 9 Third, the trial court ordered payments to begin July 1, 2003, a few months after trial. Mother asserted she was entitled to payments retroactive to the date of her application for temporary support, which was filed November 1, 2001.

## STANDARD OF REVIEW

¶ 10 "[C]hild support proceedings are of equitable cognizance." *Merritt v. Merritt,* 2003 OK 68, ¶ 7, 73 P.3d 878, 881. Matters relating to child support are addressed to the sound legal discretion of the trial court, and will not be reversed absent a showing of abuse of discretion, or that the decision is against the clear weight of the evidence. *Riedel v. Riedel,* 1992 OK CIV APP 166, ¶ 11, 844 P.2d 184, 187.

## ANALYSIS

### A. Father was not entitled to credits for voluntary child support payments

¶ 11 Mother asserts the trial court erred in crediting Father with $2,450 in voluntary monthly child support payments made to three children from a previous marriage. Father testified at trial that his other children were 19, 18, and 15 years old. The 19–year–old was a freshman at college, and the 18–year–old was about to graduate from high school and go to college. Father testified the divorce decree from his previous marriage required him to pay $2,450 a month in child support, which he had regularly paid and which he planned to continue paying. While a copy of the previous child support order was not made a part of the record, neither party disputes that it is a standard order in accord with 43 O.S.2001 § 112(E), which states a child is entitled to support only until the age of 18, or through the age of 18 if the child is attending high school.

¶ 12 In computing gross income for purposes of the child support guidelines, the trial court is specifically required to exclude from gross income child support actually received or made for children not before the court under a previous order. 43 O.S. Supp. 2005 §§ 118(E)(2)(b)(1) & 118(E)(5). Support paid voluntarily is not included within the provisions of that statute. Thus, Hus-

band's continued support for the two adult children may have been commendable, but it did not entitle him to a reduction in his gross income for purposes of computing support in this case. The trial court erred.

¶ 13 However, when a trial court in an equity action attributes an incorrect reason to a decision but reaches the correct result, we will affirm. *Kahre v. Kahre,* 1995 OK 133, 916 P.2d 1355. Because, as explained below, the total support awarded was proper, we find that the trial court's error on this issue was harmless.

### B. The trial court did not abuse its discretion in setting the amount of child support to be paid by Father

¶ 14 At the beginning of the trial, Mother's attorney requested that the court, "based on the testimony, utilize one or the other of [the] enhanced child supports" used in *Smith v. Smith,* 2003 OK CIV APP 28, 67 P.3d 351. Mother's attorney later suggested that support should be "somewhere between" $1,500 and $1,900 per month or, using the four-percent enhancement method used in *Smith,* $1,529 per month. At the conclusion of the hearing, the trial court not only relied on *Smith,* but awarded Mother an amount just $66 less than her request.

¶ 15 Mother now asserts that using the *Smith* method was error. She argues that the court should have considered the specific facts of the child's lifestyle, such as attendance at an expensive private school and participating in horse shows, and should have used calculation method approved in *Mocnik v. Mocnik,* 1992 OK 99, 838 P.2d 500.

¶ 16 In *Mocnik,* the Court noted that child support payments for one child at the Guides' top income (at that time, $10,000) were equivalent to 13.52 percent of that amount. The Court held it would be consistent with the Guides to compute child support payments by multiplying that percentage by the parties' gross monthly income. *Id.* at ¶ 38, 838 P.2d at 507.

¶ 17 By the time *Smith* was decided, the Oklahoma Legislature had increased the Guides' top income on its schedule to $15,000.

Under the new schedule, child support payments for one child are 9.52 percent of the top amount ($15,000). Although the trial court in *Smith* used *Mocnik's* reasoning and multiplied the parties' gross monthly income by 9.52 percent, the Court of Civil Appeals pointed out that relying on that percentage for all amounts above $15,000 failed to take into account that, as total parental income increased, the Guides' percentage of income directed to child support decreased. *Id.* at ¶ 15, 67 P.3d at 355. The Court in *Smith* approved using a flat, four-percent calculation to income over $15,000, "[a]bsent other considerations," *Id.,* because child support payments for $15,000 in gross income (i.e., $1,372) is four percent greater than for $14,000 in gross income (i.e., $1,332). *Id.* at nn. 7—8, 67 P.3d at 355.

¶ 18 The Court in *Smith* noted that the decreasing nature of support payments in relation to total income means that "at some point, child support for each additional $1,000 in income approaches zero." *Id.* at ¶ 15, 67 P.3d at 355. Accordingly, *Smith* takes into account "other considerations" in reaching its ultimate decision, and states that a child's "reasonable living expenses could justify a child support award in excess of an extrapolation for income exceeding" that provided for in the Guides. *Id.* at ¶ 16, 67 P.3d at 355.

¶ 19 Neither *Mocnik* nor *Smith* requires Oklahoma courts to apply a specific, across-the-board percentage of child support payments to gross monthly income over $15,000. If the legislature had wanted to do so, it could have simply extended the Guides' schedule beyond $15,000. Instead, it chose to leave the matter to the trial court to award $1,372, plus "an additional amount determined by the court." 43 O.S.2001 § 119(B).

¶ 20 The record in the case at bar indicates that, even in applying the four-percent formula, the trial court considered the child's reasonable expenses and affluent lifestyle. Evidence on these points is in the record. The trial court's award is sufficient to meet Father's share of the costs of private school, horseback riding lessons, necessities, and other facets of the child's lifestyle. Mother has failed to show the trial court abused its

discretion in setting the amount of child support. The total amount awarded is reasonable and supported by the record.

### C. Mother has failed to show the trial court abused its discretion in declining to retroactively award child support.

 ¶ 21 Finally, Mother asserts the trial court erred by failing to retroactively award her temporary child support for the 20-month period between the filing of the petition and the divorce decree. The trial court originally declined to order temporary child support "due to the shared parenting arrangements which the parties have facilitated with the minor child during the last five (5) years [since Mother filed her divorce petition]." Although Mother requested reconsideration at trial, the final decree did not address temporary support. Mother asserts that this was error.

 ¶ 22 However, 43 O.S. Supp.2005 § 118(E)(16)(b)(1) provides:

A child support order shall not be modified retroactively regardless of whether support was ordered in a temporary order, a decree of divorce, an order establishing paternity, modification of an order of support, or other action to establish or to enforce support.

The statute is clear. Neither temporary nor permanent child support orders may be modified retroactively. *See Ward v. Ward,* 1995 OK CIV APP 51, ¶ 6, 895 P.2d 749, 751. Thus, the trial court had no authority to grant a retroactive modification of the temporary order.

 ¶ 23 Generally, temporary orders which grant support and maintenance are not reviewable. *See Nuckolls v. Nuckolls,* 1960 OK 224, ¶ 18, 356 P.2d 1089, 1093. However, even if this rule does not apply to situations where support is denied, this Court would review for abuse of discretion only. *See* 43 O.S. Supp.2005 § 110(B)(1). Such a review does not show error in this case.

¶ 24 Mother asserts she was entitled to child support during the 20 months because 43 O.S. Supp.2005 § 118(E)(10) contemplates child support in cases of "shared parenting time." But the statute specifically defines

that term to mean instances where each parent has physical custody of the child for at least 120 nights a year, and then sets a specific formula for determining child support. Mother not only failed to offer evidence on these points; she failed to argue the applicability of the statute to the trial court at any point in the proceedings. Because Mother fails to show that the trial court abused its discretion, we reject her argument.

## CONCLUSION

¶ 25 Although the trial court erred in crediting Father with some of his support payments to other children, we find that the total child support awarded did not constitute an abuse of discretion. Accordingly, we affirm.

¶ 26 AFFIRMED.

REIF, P.J., and WISEMAN, J., concur.